## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

**EMMANUEL GONZALEZ AND
ARIELLE JARREAU**,

    *Plaintiffs*,

v.

**WALMART INC.**

    *Defendant.*

**CIVIL ACTION NO**.

**JURY TRIAL DEMANDED**

## COMPLAINT

**NOW INTO COURT**, Plaintiffs, Emmanuel Gonzalez and Arielle Jarreau ("Plaintiffs"), by and through undersigned counsel, hereby submits their Complaint against Walmart Inc. ("Defendant" or "Walmart").

## INTRODUCTION

1.

Plaintiffs Emmanuel Gonzalez and Arielle Jarreau, by and through their attorney, brings this action against Walmart for violations of the Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, violations of 42 U.S.C. § 2000e et seq., and violations of 42 U.S.C. § 1981 et seq. ("Title VII").

## JURISDICTION AND VENUE

2.

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and

pursuant to 28 U.S.C. § 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under (i) under any Act of Congress providing for the protection of civil rights; and (ii) Title VII. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.

Defendant is an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b).

4.

This court has personal jurisdiction over Walmart. Defendant Walmart is a for-profit corporation doing business in Louisiana. At all times relevant, Walmart operated its business within the State of Louisiana.

5.

Defendant operates its business within the Eastern District of Louisiana. All actions and inactions by Defendant alleged herein occurred within the Eastern District of Louisiana. Venue in this district is proper for the Defendant pursuant to 28 U.S.C. §1391(b) & (c).

**PARTIES**

6.

At all relevant times, Plaintiffs have been residents of the State of Louisiana and met the definition of an "employee" under all applicable statutes.

7.

Upon information and belief, Walmart is a multinational retail corporation engaged in

2

providing discount department stores and grocery stores. At all relevant times, Walmart has met the definition of an "employer" under all applicable statutes.

## FACTS

8.

Walmart is a privately owned company that establishes discount department stores and grocery stores throughout Louisiana and employees about 2.1 million individuals across the United States, including Louisiana.

9.

The Defendant, Walmart, operates a branch of its company at 45346 Parkway Blvd., Robert, LA 70455.

10.

On or about December 19, 2022, Plaintiff, Emmanuel Gonzalez began his employment with Walmart. On or about January 2, 2023, Plaintiff, Arielle Jarreau began her employment with Walmart.

11.

Walmart utilizes a point system to measure their employees' attendance. Walmart employees are allowed a limit of six (6) points in a six-month period before employees are subject to termination. If an employee is late or misses a day, they will be given points on their attendance chart. Any point infractions will remain on the attendance chart until six (6) months have fully passed from the date of the infraction.

12.

In support of his allegation of hostile work environment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, Mr. Gonzalez

further alleges:

13. Plaintiff is a member of a protected class, Latino/Hispanic.

14. Walmart failed multiple times to provide Plaintiff a safe environment. Plaintiff has issued many complaints to defendant for issues with harassment.

15. Plaintiff was in a relationship with Plaintiff, Arielle Jarreau while employed at Walmart.

16. Mr. Gonzalez was recognized for his outstanding work performance by his Lead. In one month of working for Walmart, Mr. Gonzalez maintained an above-average performance metric that Walmart monitors for its employees. Mr. Gonzalez explained his interest in advancing within Walmart. The Lead stated based on his performance, he believes he can be tasked with more responsibility. While the Walmart Lead was congratulating Mr. Gonzalez, Walmart Manager Jacob besmirched Mr. Gonzalez accolade by stating, "yeah alright, I've seen better".

17. On or about June 22, 2023, Mr. Gonzalez used his Personal Paid Time Off ("PPTO") to clock out early. As Plaintiff was leaving the store, he said good night to his managers after passing them to leave. Manager Jacob began harassing Mr. Gonzalez by declaring, "there is no way you used your PPTO!"

18. Mr. Gonzalez attempted to clarify and provide evidence of using his PPTO hours, however Manager Jacob persistently harassed Plaintiff, insisting loudly, "there is no way!"

19. Mr. Gonzalez had never heard Manager Jacob question any Caucasian employees with such disbelief about using their PPTO hours.

20. Upon Mr. Gonzalez returning the following week, he discovered that he has erroneous points on his attendance record related to the incident on or about June 22, 2023. Mr.

4

Gonzalez received points for clocking in late and leaving early on June 22, 2023, and June 23, 2023.

21. Mr. Gonzalez contacted Walmart General Manager Eugene (Caucasian) and expressed his concern with Manager Jacob. Mr. Gonzalez stated that he believes he is being targeted by Jacob due to his Latino/Hispanic race.

22. Mr. Gonzalez requested the General Manager Eugene to review the Walmart security footage to corroborate his attendance for June 22, 2023, and June 23, 2023. Upon review of the security video footage, General Manager Eugene was able to verify that Mr. Gonzalez did not violate any attendance requirements for June 22, 2023, and June 23, 2023. General Manager Eugene confirmed that the points were added incorrectly by Manager Jacob.

23. Despite Mr. Gonzalez submitting a complaint against Manager Jacob, General Manager Eugene did not investigate or discipline Manager Jacob.

24. On or about June 27, 2023, Mr. Gonzalez was terminated by Manager Jacob. Plaintiff was terminated for Excessive absences or tardiness despite following Walmart's attendance policy. Mr. Gonzalez had about 4.5 points at the time of his termination. Additionally, a portion of his points were subject to be removed due to utilizing his PPTO for the designated absences or tardiness.

25. Plaintiff's girlfriend, Arielle Jarreau, was also terminated around the same time.

26. Plaintiff worked alongside other Caucasian employees that were no subject to the same treatment or were terminated before receiving 6 points in a 6-month period.

27. Mr. Gonzalez was subjected to a hostile work environment despite numerous complaints to defendant's Managers. Mr. Gonzalez alleges that, through discovery based on these

allegations, Plaintiff will prove Defendant did in fact foster a hostile work environment based under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.

28.

In support of her allegation of hostile work environment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, Ms. Jarreau further alleges:

29. Plaintiff is a member of a protected class, African American.

30. Walmart failed multiple times to provide Plaintiff a safe environment. Plaintiff has issued many complaints to defendant for issues with harassment.

31. On or about June 14, 2023, Ms. Jarreau sustained an injury while operating a forklift at work. Ms. Jarreau requested an employee to assist her in navigating the forklift. While Ms. Jarreau was searching for an employee to assist her, she inadvertently struck the end of an aisle. Ms. Jarreau was struck by a metal bar in the face after the collision. Ms. Jarreau immediately began bleeding from her mouth.

32. Ms. Jarreau reported the incident to her manager, and she was allowed to leave early to seek medical attention.

33. On or about June 15, 2023, Ms. Jarreau checked into Ochsner Health Center in Covington area and was referred to an orthodontist. Ms. Jarreau was given a doctor's note allowing her to return to work. Ms. Jarreau returned to work the same day to start her scheduled shift.

34. On or about June 27, 2023, Ms. Jarreau was terminated. During the termination meeting with Manager Brett (Caucasian), Ms. Jarreau was initially told that she was given a step

violation for the incident on or about June 14, 2023.

35. Plaintiff was never informed that she would suffer a violation for the incident as neither the aisle nor forklift suffered any damage from the incident. Walmart does not have a policy that outlines there will be a step violation for any incidents while using the forklift. The policy only states to immediately report the incident to a manager or supervisor.

36. Ms. Jarreau was informed that she is also being terminated for violating the attendance policy. Ms. Jarreau urged Manager Brett to verify the records of her attendance points because she used her PPTO to cover the days in question. Without verifying the attendance points, Manager Jacob walked in and informed Ms. Jarreau there is no point in looking because she is being terminated for the forklift incident. Manager Jacob specifically said the "missed time is not important."

37. Ms. Jarreau received her termination paperwork, and she was terminated for excessive absences and tardiness. The same termination reasoning was used for Mr. Gonzalez on the same day Ms. Jarreau was terminated. Ms. Jarreau had about 3.5 points at the time of her termination. Additionally, a portion of her points were subject to be removed due to utilizing her PPTO for the designated absences or tardiness.

38. Ms. Jarreau was subjected to a hostile work environment despite numerous complaints to defendant's Managers. Ms. Jarreau alleges that, through discovery based on these allegations, Plaintiff will prove Defendant did in fact foster a hostile work environment based under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.

39.

In support of his allegation of racial discrimination under Title VII of the Civil Rights

7

Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, Mr. Gonzalez further alleges:

40. Plaintiff is a member of a protected class, Latino Hispanic.

41. Walmart engaged in intentional racial discrimination in violation of the terms and conditions of Plaintiff's employment. Had Plaintiff been a Caucasian employee, Walmart would not have engaged in intentional racial discrimination against Plaintiff.

42. Mr. Gonzalez was recognized for his outstanding work performance by his Lead. In one month of working for Walmart, Mr. Gonzalez maintained an above-average performance metric that Walmart monitors for its employees. Mr. Gonzalez explained his interest in advancing within Walmart. The Lead stated based on his performance, he believes he can be tasked with more responsibility. While the Walmart Lead was congratulating Mr. Gonzalez, Walmart Manager Jacob besmirched Mr. Gonzalez accolade by stating, "yeah alright, I've seen better".

43. On or about June 22, 2023, Mr. Gonzalez used his Personal Paid Time Off ("PPTO") to clock out early. As Plaintiff was leaving the store, he said good night to his managers after passing them to leave. Manager Jacob began harassing Mr. Gonzalez by declaring, "there is no way you used your PPTO!"

44. Mr. Gonzalez attempted to clarify and provide evidence of using his PPTO hours, however Manager Jacob persistently harassed Plaintiff, insisting loudly, "there is no way!"

45. Mr. Gonzalez had never heard Manager Jacob question any Caucasian employees with such disbelief about using their PPTO hours.

46. Upon Mr. Gonzalez returning the following week, he discovered that he has erroneous

points on his attendance record related to the incident on or about June 22, 2023. Mr.
Gonzalez suffered points for clocking in late and leaving early on June 22, 2023, and
June 23, 2023.

47. Mr. Gonzalez contacted Walmart General Manager Eugene (Caucasian) and expressed
his concern with Manager Jacob. Mr. Gonzalez stated that he believes he is being
targeted and discriminated by Jacob due to his Latino/Hispanic race.

48. Mr. Gonzalez requested General Manager Eugene to review the Walmart security footage
to corroborate his attendance for June 22, 2023, and June 23, 2023. Upon review of the
security video footage, General Manager Eugene was able to verify that Mr. Gonzalez
did not violate any attendance requirements for June 22, 2023, and June 23, 2023.
General Manager Eugene confirmed that the points were added incorrectly by Manager
Jacob.

49. Despite Mr. Gonzalez submitting a complaint of discrimination against Manager Jacob,
General Manager Eugene did not investigate or discipline Manager Jacob.

50. On or about June 27, 2023, Mr. Gonzalez was terminated by Manager Jacob. Plaintiff
was terminated for Excessive absences or tardiness despite following Walmart's
attendance policy. Mr. Gonzalez had about 4.5 points at the time of his termination.
Additionally, a portion of his points were subject to be removed due to utilizing his PPTO
for the designated absences or tardiness.

51. Mr. Gonzalez a Latino Hispanic employee was terminated when a Caucasian Manager
stated he violated the attendance policy without proof. However, Mr. Gonzalez complaint
of discrimination against Manager Jacob went uninvestigated or reported by General
Manager Eugene for Walmart.

52. Walmart has a history of terminating employees due to their race and blaming it on their attendance. Arielle Jarreau (African American) was terminated for violating the attendance policy without verifying her points.

53. Mr. Gonzalez was subjected to racial discrimination. Ms. Gonzalez alleges that, through discovery based on these allegations, Plaintiff will prove Defendant did in fact engage in intentional racial discrimination in violation of the terms and conditions of Plaintiff's employment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.

54.

In support of her allegation of racial discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, Ms. Jarreau further alleges:

55. Plaintiff is a member of a protected class, African American.

56. Walmart engaged in intentional racial discrimination in violation of the terms and conditions of Plaintiff's employment. Had Plaintiff been a Caucasian employee, Walmart would not have engaged in intentional racial discrimination against Plaintiff.

57. On or about June 14, 2023, Ms. Jarreau sustained an injury while operating a forklift at work. Ms. Jarreau requested an employee to assist her in navigating the forklift. While Ms. Jarreau was searching for an employee to assist her, she inadvertently struck the end of an aisle. Ms. Jarreau was struck by a metal bar in the face after the collision. Ms. Jarreau immediately began bleeding from her mouth.

58. Ms. Jarreau reported the incident to her manager, and she was allowed to leave early to seek medical attention.

59. On or about June 15, 2023, Ms. Jarreau checked into Ochsner Health Center in Covington area and was referred to an orthodontist. Ms. Jarreau was given a doctor's note allowing her to return to work. Ms. Jarreau returned to work the same day to start her scheduled shift.

60. On or about June 27, 2023, Ms. Jarreau was terminated. During the termination meeting with Manager Brett (Caucasian), Ms. Jarreau was initially told that she was given a step violation for the incident on or about June 14, 2023. This happened around the same time and same day that Mr. Gonzalez was being terminated.

61. Plaintiff was never informed that she would suffer a violation for the incident as neither the aisle nor forklift suffered any damage from the incident. Walmart does not have a policy that outlines there will be a step violation for any incidents while using the forklift. The policy only states to immediately report the incident to a manager or supervisor.

62. Ms. Jarreau was informed that she is also being terminated for violating the attendance policy. Ms. Jarreau urged Manager Brett to verify the records of her attendance points because she used her PPTO to cover the days in question. Without verifying the attendance points, Manager Jacob walked in and informed Ms. Jarreau there is no point in looking because she is being terminated for the forklift incident. Manager Jacob specifically said the "missed time is not important."

63. Ms. Jarreau received her termination paperwork, and she was terminated for excessive absences and tardiness. The same termination reasoning was used for Mr. Gonzalez on the same day Ms. Jarreau was terminated. Ms. Jarreau had about 3.5 points at the time of her termination. Additionally, a portion of her points were subject to be removed due to utilizing her PPTO for the designated absences or tardiness.

64. Walmart has a history of terminating employees due to their race and blaming it on their attendance. Emmanuel Gonzalez (Latino Hispanic) was terminated for violating the attendance policy without verifying his points.

65. Ms. Jarreau was subjected to racial discrimination. Ms. Jarreau alleges that, through discovery based on these allegations, Plaintiff will prove Defendant did in fact engage in intentional racial discrimination in violation of the terms and conditions of Plaintiff's employment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.

66.

In support of his allegation of retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Mr. Gonzalez further alleges:

67. Plaintiff is a member of a protected class, Latino Hispanic.

68. Walmart engaged in intentional retaliation in violation of the terms and conditions of Plaintiff's employment. Had Plaintiff not complained of racial discrimination, Walmart would not have engaged in intentional retaliation against Plaintiff.

69. Mr. Gonzalez was recognized for his outstanding work performance by his Lead. In one month of working for Walmart, Mr. Gonzalez maintained an above-average performance metric that Walmart monitors for its employees. Mr. Gonzalez explained his interest in advancing within Walmart. The Lead stated based on his performance, he believes he can be tasked with more responsibility. While the Walmart Lead was congratulating Mr. Gonzalez, Walmart Manager Jacob besmirched Mr. Gonzalez accolade by stating, "yeah alright, I've seen better".

70. On or about June 22, 2023, Mr. Gonzalez used his Personal Paid Time Off ("PPTO") to

clock out early. As Plaintiff was leaving the store, he said good night to his managers after passing them to leave. Manager Jacob began harassing Mr. Gonzalez by declaring, "there is no way you used your PPTO!"

71. Mr. Gonzalez attempted to clarify and provide evidence of using his PPTO hours, however Manager Jacob persistently harassed Plaintiff, insisting loudly, "there is no way!"

72. Mr. Gonzalez had never heard Manager Jacob question any Caucasian employees with such disbelief about using their PPTO hours.

73. Upon Mr. Gonzalez returning the following week, he discovered that he has erroneous points on his attendance record related to the incident on or about June 22, 2023. Mr. Gonzalez suffered points for clocking in late and leaving early on June 22, 2023, and June 23, 2023.

74. Mr. Gonzalez contacted Walmart General Manager Eugene (Caucasian) and expressed his concern with Manager Jacob. Mr. Gonzalez stated that he believes he is being targeted by Jacob due to his Latino/Hispanic race.

75. Mr. Gonzalez requested General Manager Eugene to review the Walmart security footage to corroborate his attendance for June 22, 2023, and June 23, 2023. Upon review of the security video footage, General Manager Eugene was able to verify that Mr. Gonzalez did not violate any attendance requirements for June 22, 2023, and June 23, 2023. General Manager Eugene confirmed that the points were added incorrectly by Manager Jacob.

76. Despite Mr. Gonzalez submitting a complaint of discrimination against Manager Jacob, General Manager Eugene did not investigate or discipline Manager Jacob.

77. On or about June 27, 2023, Mr. Gonzalez was terminated by Manager Jacob. Plaintiff was terminated for Excessive absences or tardiness despite following Walmart's attendance policy. Mr. Gonzalez had about 4.5 points at the time of his termination. Additionally, a portion of his points were subject to be removed due to utilizing his PPTO for the designated absences or tardiness.

78. Plaintiff was terminated by the same manager he made a complaint of racial discrimination against.

79. Mr. Gonzalez was subjected to retaliation. Mr. Gonzalez alleges that, through discovery based on these allegations, Plaintiff will prove Defendant did in fact engage in intentional retaliation in violation of the terms and conditions of Plaintiff's employment under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq, and 42 U.S.C. § 1981.

**CAUSES OF ACTION**

**AS FOR THE FIRST CAUSE OF ACTION AGAINST
DEFENDANT FOR A VIOLATION OF
Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981
(Hostile Work Environment)**

80.

Plaintiffs state a cause of action for hostile work environment because of their protected activities against the defendant as they are protected under Title VII of Civil rights act of 1964, as amended, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981. Plaintiffs repeat and re-allege the allegations contained in paragraphs 12 and 28, as if fully set forth herein.

81.

Plaintiff, Emmanuel Gonzalez is a member of a protected class- Latino Hispanic.

Plaintiff, Arielle Jarreau is a member of a protected class- African American.

82.

Defendant has engaged in intentional racial discrimination in the terms and conditions of the Plaintiffs' employment, including, but not limited to, subjecting Plaintiff to intentional discrimination in harassment, hostile work environment, and termination all in violation of the Civil Rights Act of 1964.

83.

The harassment was so severe and pervasive that it affected the term, condition and/or privilege of Plaintiffs' employment with the defendant, thus creating an abusive work environment.

84.

By subjecting Plaintiff to an abusive work environment, Defendant intentionally or recklessly engaged in an extreme and outrageous course of conduct that caused Plaintiffs significant emotional distress.

85.

Plaintiffs' requests for relief are set forth below.

**AS FOR THE SECOND CAUSE OF ACTION AGAINST DEFENDANT FOR A VIOLATION OF**
**Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981**
**(Racial Discrimination)**

86.

Plaintiffs states a cause of action for racial discrimination because of their protected activities against the defendant as they are protected under Title VII of Civil rights act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Plaintiffs repeat and re-allege the allegations contained in paragraph 39 and 454, as if

15

fully set forth herein.

87.

Plaintiff, Emmanuel Gonzalez is a member of a protected class- Latino Hispanic.

Plaintiff, Arielle Jarreau is a member of a protected class- African American.

88.

Defendant has engaged in intentional racial discrimination in violation of the terms and

conditions of the Plaintiffs' employment, including, but not limited to, subjecting Plaintiffs to a

hostile work environment, harassment, and termination all in violation of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981.

89.

Defendant's conduct violates Title VII.

90.

By the conduct described above, Defendant intentionally deprived the Plaintiffs of

the same rights as are enjoyed by other citizens to the creation, performance, enjoyment,

and all benefits and privileges, of their employment relationship with Defendant, in

violation of 42 U.S.C. § 1981.

91.

As a result of defendant's discrimination in violation of 42 U.S.C. § 2000e et seq, the

Plaintiffs have been denied employment advancement opportunities providing additional

compensation, thereby entitling them to injunctive and equitable monetary relief; and have

suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of

defendant's actions, thereby entitling them to compensatory damages.

92.

In its discriminatory actions as alleged above, defendant has acted with malice or reckless indifference to the rights of the above-named African American and Latino Hispanic Plaintiffs, and thereby entitling them to an award of punitive damages.

93.

Plaintiffs' requests for relief are set forth below.

**AS FOR THE THIRD CAUSE OF ACTION AGAINST
DEFENDANT FOR A VIOLATION OF
Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1981
(Retaliation)**

94.

Plaintiff, Emmanuel Gonzalez states a cause of action for retaliation because of his protected activities against the defendant as they are protected under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e *et seq*., and 42 U.S.C. § 1981. Plaintiff repeats and re-alleges the allegations contained in paragraph 66, as if fully set forth herein.

95.

 Plaintiff reported Manager Jacob of discrimination he suffered from and as such engaged in protected activity under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1981.

96.

Defendant has engaged in intentional retaliation discrimination in violation of the terms and conditions of the Plaintiff's employment, including, but not limited to, subjecting Plaintiff a hostile work environment, harassment, and termination all in violation of the Civil Rights Act of 1964.

97.

Defendant's conduct violates Title VII.

98.

As a result of defendant's discrimination in violation of 42 U.S.C. § 2000e et seq., the

Plaintiff has been denied intentional discrimination in pay and unlawful termination, thereby

entitling him to injunctive and equitable monetary relief; and have suffered anguish, humiliation,

distress, inconvenience and loss of enjoyment of life because of defendant's actions, thereby

entitling him to compensatory damages.

99.

In its discriminatory actions as alleged above, defendant has acted with malice or

reckless indifference to the rights of the above-named Latino Hispanic employee, and thereby

entitling him to an award of punitive damages.

100.

Plaintiff's requests for relief are set forth below.

## **ADMINISTRATIVE PROCEDURES**

1.

On or about April 26, 2024, Plaintiff, Emmanuel Gonzalez filed a timely Charge of

Discrimination against Walmart Inc., alleging discrimination with the Equal Employment

Opportunity Commission ("EEOC").  (A true and accurate copy of EEOC Charge of

Discrimination # 461-2024-02267, is attached hereto as "Exhibit A")

2.

On or about April 26, 2024, Plaintiff, Arielle Jarreau filed a timely Charge of

Discrimination against Walmart Inc., alleging discrimination with the Equal Employment

Opportunity Commission ("EEOC"). (A true and accurate copy of EEOC Charge of

Discrimination # 461-2024-02270, is attached hereto as "Exhibit B")

3.

On or about May 15, 2024, the EEOC issued a "Dismissal and Notice Of Rights" letter

for Plaintiff, Emmanuel Gonzalez's Charge of Discrimination. On or about May 15, 2024, Mr.

Gonzalez received this letter. (A true and accurate copy of the EEOC "Dismissal and Notice of

Rights" letter for EEOC Charge of Discrimination # 461-2024-02267, is attached hereto as

"Exhibit C".

4.

On or about May 15, 2024, the EEOC issued a "Dismissal and Notice Of Rights" letter

for Plaintiff, Arielle Jarreau's Charge of Discrimination. On or about May 15, 2024, Ms. Jarreau

received this letter. (A true and accurate copy of the EEOC "Dismissal and Notice of Rights"

letter for EEOC Charge of Discrimination # 461-2024-02270, is attached hereto as "Exhibit D".

5.

To remedy the violations of the rights of the Plaintiffs, Plaintiffs request that the Court

award them the relief prayed for below.

**PRAYER FOR RELIEF**

**WHEREFORE**, Emmanuel Gonzalez and Arielle Jarreau pray for the following relief:

1.

That the practices of Defendant complained of herein be determined and adjudged to be

in violation of the rights of Mr. Gonzalez and Ms. Jarreau under Title VII and Louisiana Revised

Statute §23:631-632, and any other cause(s) of action that can be inferred from the facts set forth

herein;

19

2.

All damages which Mr. Gonzalez and Ms. Jarreau have sustained as a result of Defendant's conduct, including back pay, front pay, liquidated damages, punitive damages, general and special damages for lost compensation and job benefits she would have received but for Defendant's unlawful and retaliatory conduct;

3.

An award to Plaintiffs of pre-judgment interest at the highest available rate, from and after the date of service of the initial complaint in this action on all owed wages from the date such wages were earned and due;

4.

An award representing Defendant's share of FICA, FUTA, state unemployment insurance and any other required employment taxes;

5.

Awarding Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

6.

An award to Plaintiffs of compensatory and punitive damages against Defendant, including but not limited to damages for physical injury, emotional distress, humiliation, embarrassment, and anguish;

7.

Post-judgment interest, as provided by law; and

8.

Such other and further legal and equitable relief as may be found appropriate and may be deemed just or equitable.

## JURY DEMAND

Mr. Gonzalez and Ms. Jarreau demand a trial by jury of all issues do triable in this action.

Respectfully submitted this 12th day of August 2024.

Respectfully Submitted,

**THE MINIAS LAW FIRM**

*/s/ Christopher A. MInias*
**Christopher A. Minias (#36230)**
1615 Poydras Street
Suite 900
New Orleans, LA 70112
Phone: (504) 777-7529
Fax: (504) 556-2866
Email: chris@miniaslaw.com

## SERVICE INFORMATION

Plaintiff mailed this day, August 12, 2024, by USPS certified mail Notice of Lawsuit and *Request to Waive Service of a Summons*, two copies of the *Waiver of the Service of the Summons Citation and Acceptance of Service* and a stamped self-addressed envelope to Defendant's agent: C T Corporation System 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

*/s/ Christopher Minias*
CHRISTOPHER MINIAS